**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
         jgavenman@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Max S. Roberts*
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: jmarchese@bursor.com
       mroberts@bursor.com

*Attorneys for Plaintiffs*

*Pro Hac Vice Application Forthcoming

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS SANTIAGO and KARENA FENG, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>   v.<br><br>PETCO ANIMAL SUPPLIES STORES, INC.,<br><br>                              Defendant. | Case No. 3:23-cv-00227-CAB-AGS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Luis Santiago and Karena Feng ("Plaintiffs") bring this action against Petco Animal Supplies Stores, Inc. ("Petco" or "Defendant") on behalf of themselves and all others similarly situated. Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

Plaintiffs are filing this First Amended Complaint with the written consent of Defendant pursuant to Fed. R. Civ. P. 15(a)(2).

## NATURE OF THE ACTION

1. This is a class action suit brought against Petco for aiding, agreeing with, employing, procuring, or otherwise enabling the wiretapping of the electronic communications of visitors to its website, petco.com (the "Website"). The wiretaps, which are embedded in the chat function on the Website, are used without the consent of visitors to the Website. Defendant contracts with a third party, Salesforce, Inc. ("Salesforce") to provide the software that runs Defendant's chat function. The electronic communications made in the chat function are routed through the servers of and are used by Salesforce to, among other things, secretly observe and record website visitors' electronic communications in real time. The nature of Salesforce's licensing agreement with Defendant is such that Defendant "aids, agrees with, employs, or conspires" to permit Salesforce to read, attempt to read, to learn, and/or use the chats without the consent of visitors to the Website, thus violating the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631. Similarly, the nature of Salesforce's licensing agreement with Defendant is such that Defendant "procure[d] [Salesforce] to intercept or endeavor to intercept" electronic communications in violation of Pennsylvania's Wiretapping and Electronic Surveillance Act ("WESCA"), 18 Pa. Con. Stat. §§ 5701, *et seq*.

2. Plaintiffs bring this action on behalf of all persons who used Salesforce's Chat function on the Petco website, and whose electronic

communications were intercepted or recorded by Salesforce.

3. Plaintiff Luis Santiago also brings this action on behalf of all Pennsylvania residents who used Salesforce's Chat function on the Petco website while in Pennsylvania, and whose electronic communications were intercepted or recorded by Salesforce.

4. Plaintiff Karena Feng also brings this action on behalf of all California residents who used Salesforce's Chat function on the Petco website while in California, and whose electronic communications were intercepted or recorded by Salesforce.

## PARTIES

5. Plaintiff Luis Santiago is a Pennsylvania resident and citizen. In or about June 2021, and while in Pennsylvania, Mr. Santiago visited the Petco website from his computer. Mr. Santiago used the chat function to interact with a live agent on the Website. During this visit, his electronic communications with Petco—specifically, the words he entered in the chat function—were intercepted in real time and were disclosed to Salesforce through the wiretap. Mr. Santiago was unaware at the time that his electronic communications were being intercepted in real-time and would be disclosed to Salesforce. Mr. Santiago was not asked for, nor did he provide his prior consent to, disclosure of his chats to Salesforce.

6. Plaintiff Karena Feng is a California resident and citizen. In or about April 2022, and while in California, Ms. Feng visited the Petco website from her computer. Ms. Feng used the chat function to interact with a live agent on the Website. During this visit, her electronic communications with Petco—specifically, the words she entered in the chat function—were intercepted in real time and were disclosed to Salesforce through the wiretap. Ms. Feng was unaware at the time that her electronic communications were being intercepted in real-time and would be disclosed to Salesforce. Ms. Feng was not asked for, nor did she provide her prior consent to, disclosure of her chats to Salesforce.

7. Defendant Petco is a Delaware corporation whose principal place of business is 10850 Via Frontera, San Diego, California 92127.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of a state different from at least one Defendant.

9. This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in California.

10. Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because Defendant resides in this judicial district.

## FACTUAL ALLEGATIONS

### I. Overview Of The Wiretaps

11. Salesforce offers for sale a software service called "Chat," which is a combination of a basic customer service chat function and backend analytics tools to ostensibly improves a company's customer service experience.

12. The Chat service can be used with any website, as Chat is an Application Programming Interface (API) that can be "plugged into" an existing website. The Chat API is run from Salesforce web servers but allows for chat functionality on the contracting company's website. A company must purchase a license from Salesforce to use the Chat feature on its website.

13. In short, Salesforce runs the Chat service from its servers, but customers interact with the Chat service on a separate company's website. Petco is one of those companies. Thus, whenever a chat message is sent from Plaintiffs to Petco customer service, it is first routed through a Salesforce server.

14. The Chat service needs to run on Salesforce servers because Salesforce analyzes the customer-support agent interactions in real time to create live transcripts

of communications as they occur, among other services.

15. The Live Agent Administrator Manual (the "Manual") from Salesforce notes that "Chat transcripts are created automatically and are meant to provide a paper trail about your agents' interactions with customers."

16. The Manual further provides that supervisors can view transcripts in real time. This is accomplished because the contents of the chat are being routed through Salesforce webservers in real time, and then sent to the supervisor requesting the live transcript.

17. Thus, through the Chat function, Salesforce is able to record the other electronic communications of visitors to websites where the code is installed, including the content of all chat communications between a website and visitors to the website. It also allows Salesforce to track the amount of time spent on the website, geographic location of the visitor, and other information described above.

18. An example of this transmission of data can be seen in the image below. As a chat message is sent to the Petco customer service representative (*picture left*), network traffic simultaneously flows through a Salesforce web server directly to Salesforce (*picture right*), as indicated by the "request URL" being "salesforceliveagent.com."



19. Thus, through the Chat function, Salesforce directly receives the electronic communications of visitors to Petco's website, in real time.

20. Salesforce's Chat also has a "Sneak Peek" feature, which is operating on the Website as indicated by the code above.

21. When "Sneak Peek" is enabled on a website (such as Defendant's), as the below screenshots of a demonstration of Sneak Peek indicate, anything that "an end user" types is displayed on Salesforce's dashboard[1]:



---
[1] HOW TO SETUP SNEAK PEEK IN SALESFORCE CHAT?, https://youtu.be/lGDdRcVBPzU.

22. More invasively, the "Sneak Peak" feature transmits what a user is communicating to a website *before* a user actually sends the chat. In other words, if a user simply types something into the Chat function, the message is transmitted to Salesforce before "Send" is clicked:



23. Accordingly, as currently deployed on Defendant's Website, Salesforce's Chat function functions as a wiretap.

24. When Chat is used on a website conversation, it is not like a tape recorder or a "tool" used by one party to record the other. Instead, Chat involves Salesforce—a separate and distinct third-party entity from the parties to the conversation—using Chat to eavesdrop upon, record, extra data from, and analyze a conversation to which they are not a party. This is so because Salesforce itself is collecting the content of any conversation. That data is then analyzed by Salesforce before being provided to any entity that was a party to the conversation (like Defendant).

25. Salesforce's business model involves entering into voluntary partnerships with various companies and surveilling communications on their partners' websites through Chat.

26. One of Salesforce's partners is Defendant Petco.

27. Pursuant to an agreement with Salesforce, Petco aided, agreed with, employed, procured, or otherwise enabled Salesforce to wiretap visitors to its Website by voluntarily embedding the software code for Chat on the Website.

28. Petco knows that Salesforce, through software, captures the electronic communications of visitors to the Website, and pays Salesforce to conduct these activities.

## II. Defendant Aided, Agreed With, Employed, Procured, Or Otherwise Enabled Salesforce's Wiretapping Of Plaintiffs' Electronic Communications

29. Plaintiffs each visited Defendant's Website as set forth above. During those visits, Plaintiffs used the Chat function to speak with live agents.

30. During those visits, Salesforce, through the Chat function, intercepted the content of Plaintiffs' electronic communications with Defendant's customer service agent in real time. The Salesforce wiretap also captured the date and time of the visits, the duration of the visits, Plaintiffs' IP addresses, their locations at the time of the visits, their browser types, and the operating system on their devices.

31. Salesforce's recording of electronic begins the moment a user accesses or interacts with the Chat feature on Defendant's website, prior to a user consenting to any sort of privacy policy or the wiretaps generally. Nor are users told, prior to being wiretapped, that their electronic communications are being simultaneously directed to Salesforce, rather than only to Defendant's customer service agent.

32. Users, including Plaintiffs, are thus not on notice of any wiretapping when they begin a Chat interaction, nor do they provide their prior consent to the same.

33. Plaintiff Santiago was in Pennsylvania when he accessed Defendant's website through an internet browser. Upon having the browsers access the website in Pennsylvania, Salesforce's Chat function instructed the browser in Pennsylvania to send electronic communications directly to it from the Pennsylvania location of the browser to Salesforce's servers, which are also located in California.

34.     Plaintiff Feng was in California when she accessed Defendant's website through an internet browser. Upon having the browsers access the website in California, Salesforce's Chat function instructed the browser in California to send electronic communications directly to it from the California location of the browser to Salesforce's servers, which are also located in California.

35.     Salesforce has access to class members' chat interactions with Petco because Salesforce contracts with Petco to provide the Chat service.

## CLASS ALLEGATIONS

36.     Plaintiffs seek to represent a class of all persons who used Salesforce's Chat function on the Petco website, and whose electronic communications were intercepted or recorded by Salesforce (the "Class").

37.     Plaintiff Santiago also seeks to represent a subclass of all Pennsylvania residents who used Salesforce's Chat function on the Petco website while in Pennsylvania, and whose electronic communications were intercepted or recorded by Salesforce (the "Pennsylvania Subclass").

38.     Plaintiff Feng also seeks to represent a subclass of all California residents who used Salesforce's Chat function on the Petco website while in California, and whose electronic communications were intercepted or recorded by Salesforce (the "California Subclass").

39.     Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and Subclasses number in the thousands. The precise number of Class and Subclass Members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class and Subclass Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

40.     Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Common

legal and factual questions include, but are not limited to, whether Defendant has violated the CIPA and the WESCA and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

41. The claims of the named Plaintiffs are typical of the claims of the Class because the Plaintiffs, like all other class members, visited Petco's website and had their electronic communications intercepted and disclosed to Salesforce through the use of Salesforce's Chat function.

42. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

43. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members. Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

# CAUSES OF ACTION

## COUNT ONE
### Violation of California Invasion of Privacy Act
### Cal. Penal Code § 631

44. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

45. Plaintiffs bring this claim against Defendant individually and on behalf of the Class and California Subclass.

46. CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> Or

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

> Or

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

> Or

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

47. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*,

2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

48. Salesforce's Chat product is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

49. Salesforce is a "separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Salesforce was a third party to any communication between Plaintiffs and Class Members, on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023).

50. At all relevant times, by using Chat, Salesforce willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiffs and putative Class and California Subclass Members, on the one hand, and Defendant's Website, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

51. At all relevant times, Defendant aided, agreed with, employed, conspired with, or otherwise enabled Salesforce to wiretap consumers to the Website using Chat and to accomplish the wrongful conduct at issue here.

52. Plaintiffs and Class and California Subclass Members did not consent to Salesforce's intentional access, interception, reading, learning, recording, and collection of Plaintiffs and Class Members' electronic communications. Nor did

Plaintiffs and Class and California Subclass Members consent to Defendant aiding, agreeing with, employing, or otherwise enabling Salesforce's conduct.

53. Because Defendant (and Salesforce) are headquartered in California, a CIPA § 631 can be pursued by all users of the Website nationwide. *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (finding that non-resident plaintiff had statutory standing under CIPA where recordings by California defendant took place in California); *see also Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) (same and noting "[c]ourts have declined to read CIPA's legislative intent as a limitation on standing when the statute does not impose any residency requirements"); *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) ("A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents.").

54. The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

55. Plaintiffs and Class Members seek all relief available under Cal. Penal Code § 637.2, including injunctive relief and statutory damages of $5,000 per violation.

**COUNT TWO**
**Violation of Pennsylvania Wiretap Act**
**18 Pa. Cons. Stat. § 5701, et seq**

56. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

57. Plaintiff Santiago brings this claim individually and on behalf of the Pennsylvania Subclass against Defendant.

58. The WESCA prohibits (1) the interception or procurement of another to intercept any wire, electronic, or oral communication; (2) the intentional disclosure of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or

oral communication; and (3) the intentional use of the contents of any wire, electronic, or oral communication that the discloser knew or should have known was obtained through the interception of a wire, electronic, or oral communication. 18 Pa. Cons. Stat. §§ 5703(1)-(3).

59. Any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use, a wire, electronic, or oral communication in violation of the Act is subject to a civil action for (1) actual damages, not less than liquidated damages computed at the rate of $100/day for each violation or $1,000, whichever is higher; (2) punitive damages; and (3) reasonable attorneys' fees and other litigation costs incurred. 18 Pa. Cons. Stat. § 5725(a).

60. At all relevant times, by using the Live Transcript feature of its Chat API, Salesforce intercepted, used, and disclosed the electronic communications between Plaintiff Santiago and Pennsylvania Subclass Members on the one hand, and Defendant's Website customer service agents on the other hand.

61. At all relevant times, Defendant intentionally procured the interception, use, and disclosure by Salesforce of the electronic communications between Plaintiff Santiago and Pennsylvania Subclass Members on the one hand, and Defendant's Website customer service agents on the other hand.

62. Plaintiff Santiago and Pennsylvania Subclass Members did not provide their prior consent to having their electronic communications intercepted by Salesforce, nor did they provide their prior consent to having Petco procure Salesforce to intercept their electronic communications.

63. Plaintiff and Pennsylvania Subclass Members had a justified expectation under the circumstances that their electronic communications would not be intercepted by Defendant. Plaintiff Santiago and Pennsylvania Subclass Members reasonably believed these communications would only be accessed by the Petco customer service agent with whom they were corresponding, and not by a third party like Salesforce.

64. Because use of the Live Transcript feature of its Chat API is not disclosed, Plaintiff Santiago and Pennsylvania Subclass Members were not aware that their electronic communications were being intercepted by Salesforce. Further, Defendant cannot avoid liability "merely by showing that [Plaintiff Santiago and Pennsylvania Subclass Members] unknowingly communicated directly with [Salesforce's] servers." *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022).

65. The wiretapping of Plaintiff Santiago and Pennsylvania Subclass Members occurred in Pennsylvania, where Plaintiff Santiago and Pennsylvania Subclass Members accessed the Website and where Salesforce's Chat function—as enabled by Defendant—routed Plaintiff Santiago's and Pennsylvania Subclass Members' electronic communications to Salesforce's own servers. *Popa*, 52 F.4th at 131.

66. Plaintiff and Pennsylvania Subclass members seek all relief available under 18 Pa. Cons. Stat. § 5725(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Class and Subclass under Rule 23, naming Plaintiffs as the representative of the Class and Subclasses, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclasses;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For judgment in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

(d) For compensatory, punitive, and statutory damages in amounts to be determined by the Court and/or jury;

  (e) For prejudgment interest on all amounts awarded; and

  (f) For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all claims so triable.

Dated: April 5, 2023    Respectfully submitted,

          **BURSOR & FISHER, P.A**.

          By: */s/ L. Timothy Fisher*
            L. Timothy Fisher

          L. Timothy Fisher (State Bar No. 191626)
          Jenna L. Gavenman (State Bar No. 348510)
          1990 North California Blvd., Suite 940
          Walnut Creek, CA 94596
          Telephone: (925) 300-4455
          Facsimile:  (925) 407-2700
          E-mail: ltfisher@bursor.com
             jgavenman@bursor.com

          **BURSOR & FISHER, P.A.**
          Joseph I. Marchese*
          Max S. Roberts*
          888 Seventh Avenue
          New York, NY 10019
          Telephone: (646) 837-7150
          Facsimile:  (212) 989-9163
          Email: jmarchese@bursor.com
          mroberts@bursor.com

          *Attorneys for Plaintiffs*

          *\*Pro Hac Vice Application Forthcoming*