Bethany G. Lukitsch (SBN 314376)
Kamran B. Ahmadian (SBN 314566)
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:   310.820.8800
Facsimile:    310.820.8859
*blukitsch@bakerlaw.com*
*kahmadian@bakerlaw.com*

*Attorneys for Defendant*
PETCO ANIMAL SUPPLIES
STORES, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

LUIS SANTIAGO and KARENA
FENG, individually and on behalf of all
others similarly situated,

Plaintiffs,

v.

PETCO ANIMAL SUPPLIES
STORES, INC.,

Defendant.

Case No.: 3:23-cv-0227-CAB-AGS

*[Assigned to the Hon. Cathy Ann Bencivengo]*

**PETCO ANIMAL SUPPLIES STORES, INC.'S:**

**(1) NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6); AND**

**(2) MEMORANDUM OF POINTS AND AUTHORITES**

Hearing: May 24, 2023

***PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT***

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................... 2

II.  BACKGROUND ....................................................................................... 3

III.  LEGAL STANDARD ............................................................................... 5

IV.  ARGUMENT ............................................................................................ 6

    A.  Plaintiffs Fail to State a Claim under CIPA's Section 631 .................. 6

        1.  *Plaintiffs' "aiding and abetting" theory fails.* ........................... 7

        2.  *Plaintiffs fail to plead that their communications were "intercepted" while "in transit".* ............................................... 11

    B.  Plaintiff Santiago Cannot State a Claim Under WESCA .................. 14

        1.  *Chat "software code" is not an applicable wiretapping or intercepting "device."* ............................................................... 14

        2.  *Plaintiff Santiago consented to the "recordation" of his communications with Petco.* ..................................................... 16

    C.  Plaintiffs' Claims For Punitive Damages Must Be Dismissed. .......... 18

V.  CONCLUSION ....................................................................................... 19

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................... 5, 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................. 5, 7, 18

*Bona Fide Conglomerate, Inc. v. SourceAmerica,*
2016 WL 3543699 (S.D. Cal. 2016) (Curiel, J.) ............................... 18

*Brodsky v. Apple Inc.,*
445 F. Supp. 3d 110 (N.D. Cal. 2020) .............................................. 13

*Byars v. Hot Topic, Inc.,*
2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ................................. 6, 10

*Com. v. Diego,*
2015 PA Super 143, 119 A.3d 370 (2015) ......................................... 17

*Com. v. Proetto,*
771 A.2d 823 (2001), *aff'd*, 837 A.2d 1163 (2003) ......................... 17

*Commonwealth v. Byrd,*
235 A.3d 311 (Pa. 2020) .................................................................. 16

*Commonwealth v. Hogue,*
2019 WL 3545843 (Pa. Super. Ct. Aug. 5, 2019) ............................. 15

*Crowley v. CyberSource Corp.,*
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ............................................ 15

*Freedom Transp., Inc. v. Travelers Companies, Inc.,*
2016 WL 7496731 (C.D. Cal. 2016) ................................................ 19

*In re Google Inc.,*
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .................................... 7

*In re Google Inc. Cookie Placement Consumer Priv. Litig.,*
806 F.3d 125 (3d Cir. 2015) ............................................................. 13

*Graham v. Noom, Inc.,*
533 F. Supp. 3d 823 (N.D. Cal. 2021) ......................................*passim*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

*Great Am. Ins. Co. v. Vasquez Marshall Architects*,
  2019 WL 5727414 (S.D. Cal. 2019) (Bencivengo, J.) ...................................... 19

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*,
  2007 WL 4394447 (E.D. Pa. Dec. 13, 2007) ............................................. 13, 15

*Jacome v. Spirit Airlines Inc.*,
  2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021)................................................. 15

*Javier v. Assurance IQ, LLC*,
  2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ......................................................... 9

*Johnson v. Blue Nile, Inc.*,
  2021 WL 1312771 (N.D. Cal. 2021)............................................................ 8, 10

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ......................................................................... 12

*Licea v. Am. Eagle Outfitters, Inc.*,
  2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) .................................................... 10

*Licea v. Cinmar, LLC*,
  2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) .................................................... 10

*Logue v. Curtis Mgmt. Co., Inc.*,
  2019 WL 2249981 (S.D. Cal. 2019) (Bashant, J.) ........................................... 19

*Martin v. Cty. of San Diego*,
  2011 WL 1775691 (S.D. Cal. 2011) (Anello, J.) ............................................. 18

*Martin v. Sephora USA, Inc.*,
  2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ............................................ 10, 18

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........................................................ 6, 12

*McHenry v. Renne*,
  84 F.3d 1172 (9th Cir. 1996) ........................................................................... 7

*Membrila v. Receivables Performance Mgmt., LLC*,
  2010 WL 1407274 (S.D. Cal. 2010) (Gonzalez, J.) ........................................... 6

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
  906 F. Supp. 2d 1017 (C.D. Cal. 2012) ........................................................... 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

- iii -

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cir. 2016) ............................................................................ 17

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ............................................................. 12

*Performance Designed Prod. LLC v. Plantronics, Inc.*,
  2019 WL 3082160 (S.D. Cal. 2019) (Curiel, J.) ................................................. 5

*Popa v. Harriet Carter Gifts, Inc.*,
  52 F.4th 121 (3d Cir. 2022) .................................................................. 14, 15, 16

*Potter v. Havlicek*,
  2008 WL 2556723 (S.D. Ohio June 23, 2008) ................................................. 15

*Ribas v. Clark*,
  38 Cal.3d 355 (1985) .......................................................................................... 5

*Rodriguez v. Google LLC*,
  2022 WL 214552 (N.D. Cal. 2022) .................................................................. 13

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (Ct. App. 1975) ........................................................ 6, 9, 12

*Rosenow v. Facebook, Inc.*,
  2020 WL 1984062 (S.D. Cal. 2020) (Hayes, J.) ........................................ 12, 13

*Saleh v. Nike, Inc.*,
  562 F. Supp. 3d 503 (C.D. Cal. 2021) ............................................................... 9

*State Farm Mut., Auto. Ins. Co. v. Tz'doko V'CHESED of Klausenberg*,
  543 F. Supp. 2d 424 (E.D. Pa. 2008) ............................................................... 18

*United States v. Ackies*,
  918 F.3d 190 (1st Cir. 2019) ........................................................................... 15

*In re Vizio, Inc., Consumer Privacy Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..................................................... 12, 13

*Weisbusch v. County of Los Angeles*,
  119 F.3d 778 (9th Cir. 1997) ............................................................................. 5

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ........................................................................... 18

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

*Williams v. What If Holdings, LLC*,
   2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ..................................................... 6

*Yale v. Clicktale, Inc.*,
   2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ..................................... 8, 9, 10, 11

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................................ 13

**Statutes**

18 Pa. Cons. Stat. § 5702 .......................................................................................... 14

18 Pa. Cons. Stat. § 5703 .......................................................................................... 14

18 Pa. Cons. Stat. § 5704 .................................................................................... 14, 15

18 Pa. Cons. Stat. § 5725 .......................................................................................... 14

Cal. Civ. Code § 3294(a) ........................................................................................... 18

Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-
   2523 ........................................................................................................................ 11

**Other Authorities**

Apparatus, Oxford Advanced Learner's Dictionary, available at
   https://www.oxfordlearnersdictionaries.com/us/definition/english/a
   pparatus ................................................................................................................... 15

Device, Oxford Learner's Advanced Dictionary, available at
   https://www.oxfordlearnersdictionaries.com/us/definition/english/d
   evice ....................................................................................................................... 15

Petco's Privacy Policy, available at
   https://www.petco.com/privacypolicy#howWeShareInfo, last
   visited April 10, 2023 .............................................................................................. 4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

**TO THE HONORABLE COURT, TO PLAINTIFFS, AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on May 24, 2023, or as soon thereafter as the matter may be heard, Defendant Petco Animal Supplies Stores, Inc. ("Petco") will and hereby does move for an order dismissing Plaintiff Luis Santiago's and Plaintiff Karena Feng's (collectively "Plaintiffs") First Amended Complaint ("FAC"). This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs fail to state a claim against Petco upon which relief can be granted. As outlined below, Petco expressly reserves its right to enforce the Arbitration Provision contained in its Terms of Use, should Petco later learn facts that either Plaintiff agreed to its Terms of Use.

Petco bases its Motion on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings, papers and records on file in this action. Per Chamber Rules, there will be no oral argument unless separately ordered by the Court.

Dated:  April 19, 2023

**BAKER & HOSTETLER LLP**

By:     *s/ Kamran B. Ahmadian*
        Bethany G. Lukitsch
        Kamran B. Ahmadian

        *Attorneys for Defendant*
        PETCO ANIMAL SUPPLIES
        STORES, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

## I.    __INTRODUCTION__

This lawsuit, one of many copycat wiretapping lawsuits, seeks to improperly expand the scope of California's Invasion of Privacy Act ("CIPA") and Pennsylvania's Wiretapping and Electronic Surveillance Act ("WESCA") by claiming Petco's use of routine software-based services provided by Salesforce, Inc. ("Salesforce") to assist with the chat function on its website constitutes illegal wiretapping.  By bringing these statutory wiretapping claims, Plaintiffs seek to fit a square peg (website chat communications) into a round hole (decades-old wiretapping statutes) and ignore California's comprehensive privacy statutory regime, the California Consumer Privacy Act ("CCPA").  While CIPA and WESCA contain different statutory language, have different elements, and are subject to different defenses, neither statute was ever intended by their respective legislatures to be used in the manner Plaintiffs seek in their FAC—to attack a company's lawful use of a third-party service provider to assist with the design, functionality and customer service experience of the chat feature on its website.  Consistent with recent holdings by multiple courts addressing and rejecting this novel application of old wiretapping statutes to new technology, this Court should dismiss both claims for the following reasons.

*First*, Plaintiffs' attempt to hold Petco liable under CIPA's "aiding and abetting" prong fails because CIPA does not apply when a website owner simply uses a third-party's software tool in the operation of its own website.  The FAC only contains factual allegations supporting Salesforce's restricted involvement in support of Petco's operation, and Plaintiffs cannot allege more without unsupported speculation.  Moreover, Plaintiffs did not (nor could they) plausibly allege that any "eavesdropping" occurred while the communication was *in transit*, a necessary element to Plaintiffs' CIPA claim.

*Second*, Plaintiff Santiago's WESCA claim is equally meritless.  By its unambiguous terms, WESCA does not apply because Salesforce's chat technology

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

is not a "device" as defined by the statute. Also, based on his own allegations, Mr. Santiago, the named Pennsylvania plaintiff, had knowledge and impliedly consented to the "recording" of his chat messages based on his selected means of communication—typing a message into an online chat feature on Petco's public website.

*Third*, Plaintiffs' request for punitive damages under both statutes should be dismissed because Plaintiffs do not plead any factual allegations that would demonstrate the malice, fraud, or oppression required for such damages, and also because punitive damages are not recoverable under CIPA.

## II. **BACKGROUND**

Petco is a San Diego-based pet retailer with more than 1,500 retail stores where it sells pet food, products, and services. Like most modern companies, in addition to its brick-and-mortar stores, Petco also conducts business online, through its website (www.petco.com). Before a Petco customer can finalize an online purchase, they must agree to Petco's Privacy Policy and Terms of Use, both of which are conspicuously hyperlinked throughout Petco's website for ease of reference.[1] To assist online shoppers, Petco's website includes a customer support "chat" feature which allows customers and potential customers to correspond in writing with live agents who can assist with a number of topics, including finding the status of an order and locating a certain product. *See* FAC, ¶¶ 11-19. Salesforce does not (nor

---

[1] Petco's Terms of Use contain a robust and binding Arbitration provision. Based on the information available to Petco at the time of this filing, Petco is unable to verify, without additional identifying information and/or detail regarding their interactions with Petco, whether Plaintiff Santiago or Plaintiff Feng assented to Petco's Terms of Use—e.g., by joining Petco's loyalty program or making an online purchase. Prior to filing this Motion, counsel for Petco requested from Plaintiffs' counsel the email addresses for Mr. Santiago and Ms. Feng, but Plaintiff's counsel refused to provide them without an agreement that Petco first produce any documents related to contract formation that would be relevant to a defense of arbitration. Plaintiffs' counsel's request puts the cart before the horse; Petco cannot produce the contractual documents without knowing more specific information regarding Plaintiffs' interactions with Petco and its website. Petco expressly reserves its right to enforce its Terms of Use, including the Arbitration provision, at a later date based on discovery of these pertinent facts.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

is it authorized to) use any data or information collected and/or saved from the Petco chat feature for its own independent purposes.  *See generally*, FAC.  Rather, Salesforce's collection and capture of the chat data is only for the benefit of Petco. *See id.*, ¶ 24.

As proscribed by the CCPA, Petco expressly discloses the use of third-party vendors assisting them with the operation of its online business.  Petco's Privacy Policy, which is displayed and hyperlinked at the bottom of the website and presented to online consumers prior to the creation of any account or checkout, clearly states that Petco may "disclose your personal information to service providers, contractors, and authorized vendors we use to perform business services for us … For example, we share your personal information with vendors we use to assist us [with] … providing customer support … and other critical business systems."  *See* Petco's Privacy Policy, available at https://www.petco.com/privacy policy#howWeShareInfo, last visited April 10, 2023 ("Petco's Privacy Policy").[2] Petco's Privacy Policy also provides customers with additional options to learn more about what information Petco collects, uses, or discloses to third parties, and to request the deletion of any information collected by Petco. *See id.*

On February 6, 2023, Plaintiffs Taylor Meehan, Luis Santiago, and Karena Feng filed a putative class action complaint against Petco alleging that Petco's use of third-party software to operate its chat feature violated CIPA and WESCA.  *See* Dkt. No. 1.  On April 5, 2023, Plaintiff Meehan was voluntarily dismissed. *See* Dkt. No. 10.  On that same day, Plaintiff Santiago and Plaintiff Feng filed the operative

---

[2] Generally, a court must decide a motion to dismiss by looking at the face of the complaint only.  Under the incorporation by reference doctrine, however, courts are allowed to consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the "incorporation by reference" doctrine applies with equal force to internet pages as it does to printed material.  Just as a reader must absorb a printed statement in the context of the media in which it appears, a computer user necessarily views web pages in the context of the links through which the user accessed those pages.").  Here, Plaintiffs allege they visited Petco's website, which includes a conspicuous link to Petco's Privacy Policy and Terms of Use.  *See* FAC, ¶¶ 5-6.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

FAC alleging identical allegations against Petco. *See* FAC. Plaintiffs seeks to assert the CIPA claim on behalf of themselves, a nationwide class, and a California subclass. *Id.*, ¶¶ 4, 6, 45. Plaintiff Santiago, as a Pennsylvania resident, seeks to bring a WESCA claim on behalf of himself and a Pennsylvania subclass. *Id.*, ¶¶ 3, 5, 57.

## III.   **LEGAL STANDARD**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. *See* Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*." *Id.* (emph. added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To that point, pleadings that contain "no more than conclusions … are not entitled to the assumption of truth" that would otherwise be applicable on a motion to dismiss. *Id.* at 679. Thus, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Performance Designed Prod. LLC v. Plantronics, Inc.*, 2019 WL 3082160, at *3 (S.D. Cal. 2019) (Curiel, J.) (*quoting Farm Credit Servs. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir. 2003)). Even where facts are accepted as true, "a plaintiff may plead himself out of court if he pleads facts which establish that he cannot prevail on his . . . claim." *Weisbusch v. County of Los Angeles*, 119 F.3d 778, 783, n.1 (9th Cir. 1997).

\\

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

## IV.   ARGUMENT

### A.   Plaintiffs Fail to State a Claim under CIPA's Section 631.

CIPA prohibits certain types of conduct that invade an individual's privacy. Originally enacted in 1967, well before the age of cell phones and the internet, CIPA has been updated several times to account for changes in technology and social norms. CIPA's § 631 was aimed at thwarting "one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties." *Ribas v. Clark,* 38 Cal.3d 355, 359 (1985). To do so, § 631 makes three distinct and mutually independent patterns of conduct unlawful: (1) "'intentional wiretapping [with any telegraph or telephone],' (2) 'willfully attempting to learn the contents or meaning of a communication in transit over a wire,' and (3) 'attempting to use or communicate information obtained as a result of engaging in either of the two previous activities.'" *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021) (quoting *Tavernetti v. Sup. Ct. of San Diego Cty.*, 22 Cal. 3d 187, 192 (Cal. 1978). Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." *Id.* (quoting Cal. Penal Code § 631(a)).

Here, Plaintiffs ostensibly advance their CIPA claim against Petco under the fourth "aiding and abetting" prong. *See* FAC, ¶ 1 ("This is a class action suit brought against Petco for aiding, agreeing with, employing, procuring, or otherwise enabling the wiretapping of the electronic communications of visitors to its website[.]").[3]

---

[3] Based on Petco's reading of the FAC, Plaintiffs are relying ***solely*** on the "aiding and abetting" prong to attach § 631 liability against Petco. Any attempt by Plaintiffs to advance a direct liability claim against Petco would fail. Nearly five decades of California and federal precedents make clear that as a party to the communication, Petco could not have "intercepted" a communication under CIPA. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (Ct. App. 1975) ("It is never a secret to one party to a conversation that the other party is listening to the conversation …."); *see also Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("Parties to a conversation cannot eavesdrop on their own conversation, so no other part of Section 631(a) [applies] to [the website owner]."); *Membrila v. Receivables Performance Mgmt., LLC*, 2010 WL 1407274, at *2 (S.D. Cal. 2010)

- 6 -

This claim is based on conclusory and factually unsupported allegations regarding the relationship between Petco and its service provider Salesforce, who simply provides the necessary software and support to operate the chat function on Petco's website. *See id.*, ¶¶ 11-28. As discussed below, these vague and conclusory statements fail to state a claim under CIPA for several reasons. First, "aiding and abetting" liability under CIPA applies only when the alleged third-party's actions and use of the data is *wholly independent* of Petco and not undertaken at the direction of, or for the benefit of, Petco. Second, the FAC fails to allege that any communications were *in transit* when they were allegedly intercepted, as any alleged sharing of website chat transcripts would have occurred *after* the chats were received by Petco, the intended recipient. For these reasons, Plaintiffs' § 631 claim should be dismissed with prejudice.

### 1. Plaintiffs' "aiding and abetting" theory fails.

As an initial matter, the basic premise of Plaintiffs' CIPA aiding and abetting theory is fundamentally flawed. In essence, Plaintiffs are alleging that Petco, who cannot be held **directly** liable for wiretapping under § 631 because it is a party to the communications, is liable because it has instead hired Salesforce to surreptitiously wiretap those **very same** electronic communications. Plaintiffs are likely to argue that Petco is still liable *even if* Salesforce was acting as an extension and/or tool of Petco—i.e., collecting, organizing, or otherwise using any collected information solely for Petco's benefit. In other words, Plaintiffs suggest that Petco has paid Salesforce to violate a statute that it could not have violated on its own behalf if it performed the very same actions. This legal theory lacks logical reasoning and clearly is not aligned with the intent of the California Legislature when they enacted

___

(Gonzalez, J.) ("Plaintiff's claim for violation of Section 631 fails, because this section applies only to eavesdropping by a third party ...."); *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *9 (C.D. Cal. Feb. 14, 2023) (finding party exemption for direct liability under § 631).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

CIPA almost six decades ago.  Setting that aside, Plaintiffs still have failed to sufficiently allege a § 631 violation.[4]

Plaintiffs' allegations regarding Petco's use of Salesforce as a service provider to provide software solutions and operate or otherwise assist with chat communications on Petco's website, including the routing of chat communications through servers owned and operated by Salesforce, does not give rise to a § 631 claim under an aiding and abetting theory.  Plaintiffs fail to allege that the content of any individual chat between a consumer and Petco customer service is accessible to Salesforce, let alone *what* (if anything) Salesforce does (or can do) with the collected information, nor could Plaintiffs do so without complete speculation.  *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (a party "cannot be liable for eavesdropping on its own communications" or recording its own communications and sending them to a [third-party vendor] (because sharing a record is not eavesdropping).").

Courts have held that the common business practice of using software from a third-party vendor to facilitate customer website chats does not violate CIPA because such software service providers are not third-party eavesdroppers if they simply assist the party to the communication in obtaining, analyzing and utilizing their own data.  In other words, a company's use of a website vendor does not

---

[4] Separately, Plaintiffs' CIPA claim advanced under the aiding and abetting prong runs afoul of Rule 8 of the Federal Rules of Civil Procedure which requires the the complaint "give the defendant fair notice of what the claim ... is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  More specifically, to comply with Rule 8, a complaint should clearly and fully set forth "who is being sued, for what relief, and on *what theory*, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996) (emph. added). Here, any aiding and abetting theory would require an underlying § 631(a) violation, presumably by Salesforce.  The FAC does not give any indication, certainly not in a "short and plain" manner, as to which prong of CIPA was allegedly violated by Salesforce.  *See, e.g., In re Google Inc.*, 2013 WL 5423918, at *20 (N.D. Cal. Sept. 26, 2013) (discussing differences between first and second clauses of § 631(a), and Legislature's intent for the two clauses to apply to different types of communications).  Because each clause is different, and is subject to different legal arguments and defenses, Plaintiffs' failure to identify their legal theory in an organized and concise matter warrants dismissal. *McHenry*, 84 F.3d at 1178.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

constitute eavesdropping under CIPA where the vendor is a tool, agent, or extension of the company itself. *See Noom*, 533 F. Supp. 3d at 832; *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771 (N.D. Cal. 2021); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) ("Clicktale is not a third-party eavesdropper. It is a vendor that provides a software service that allows its clients to monitor their website traffic."). In *Noom*, for example, the court concluded that the defendant's use of a third-party session replay software provider could not give rise to a CIPA violation, even though the vendor "captures its clients' data, hosts it on [vendor's] servers, and allows the clients to analyze their data." 533 F. Supp. 3d at 832. The court recognized that the vendor was "an extension of [defendant]" and simply "provide[d] a tool— []—that allow[ed] [the defendant] to record and analyze its own data in aid of [its] business." *Id.* (citing *Rogers*, 52 Cal. App. 3d at 897-99). The court in *Yale* similarly found no actionable CIPA violation based on a clothing retailer's use of a vendor to track website traffic. 2021 WL 1428400, at *3.

In their FAC, Plaintiffs allege that because Salesforce was a "separate legal entity that offers 'software-as-a-service'" it qualifies as a third-party and not as a tool, agent, or extension of Petco. FAC, ¶ 49 (citing *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021); *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023)). These cases are both factually and legally distinguishable and are outliers. As a preliminary matter, unlike the present case that pertains to a chat feature, *Saleh* and *Javier* both involved a different technology—session replay technology. *See id.* Moreover, in *Javier*, in stark contrast to this case, the plaintiff actually pled that the third party "monitors, analyzes, and stores information about visits to Assurance's websites, and that the third party ***can use that information for other purposes.***" *Javier*, 2023 WL 114225, at *6 (emph. added) (recognizing that a third-party that "has no independent capability to divulge the recording for any other purpose but that of its owner" is akin to the tape recorder in *Rogers*). In fact, in *Javier*, the plaintiff pled facts

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

plausibly demonstrating the *actual* sharing of plaintiff's information garnered from the session replay provider. *See id. at *1.* No such facts are pled or could be pled here.[5]

The *vast majority* of courts who have addressed similar arguments in chat-related cases have followed *Noom*, *Blue Nile*, and *Yale*, dismissing claims where the facts alleged demonstrate, such as they do here, that the third-party vendor is simply acting as its client's service provider. *See Hot Topic*, 2023 WL 2026994, at *10 ("[T]he facts alleged in the FAC and inferences that can be drawn from them demonstrate that Defendant uses a third-party vendor to 'record and analyze its own data in aid of [Defendant]'s business,' not the 'aggregation of data for resale,' which makes the third-party an 'extension' of Defendant's website, not a 'third-party eavesdropper.'"); *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *8 (C.D. Cal. Mar. 7, 2023) ("The pleadings, taken as true at this stage, nowhere suggest that the third party has the ability to use the information independently. The bare allegations only suggest that the third party analyzed or used the data on behalf of or in tangent with Defendant."); *Licea v. Cinmar, LLC*, 2023 WL 2415592, at *9 (C.D. Cal. Mar. 7, 2023) (Plaintiffs' allegations suggest a situation more akin to *[Noom]*, where the court found that a third party was not an eavesdropper where their software collected clients' data, kept the data on its servers, and allowed clients to analyze their data."); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (R. & R. of Magistrate Judge Stanley Boone) ("[C]aselaw supports

---

[5] Despite recognizing an "independent capability" exception, the *Javier* court curiously rejects the *Noom* line of cases, which it saw as improperly reading a "use" element into the second prong of § 631 that does not exist. *See Javier*, 2023 WL 114225, at *6. In practice, however, whether or not a third-party is **capable** of using the information independently or **actually does use** the information independently is a distinction without a difference. In other words, there is no difference between a third party who is technologically incapable of using the collected data for an independent purpose and a third-party service provider who may have the technical capability but is expressly prohibited from doing so by the website owner. The privacy goals of § 631 are equally satisfied in either instance. Nevertheless, Plaintiffs have not alleged (nor can they) that Salesforce used (or even had the capability to use) the chat data for an independent purpose.

the contention that a third-party vendor that is deemed to merely facilitate customer chats as an extension of the company does not trigger derivative liability under § 631(a).").

Here, Plaintiffs' allegations regarding the Salesforce chat feature merely describe its basic *potential* functionalities, relying on an unverified Salesforce "Live Agent Administrator Manual" likely found on the internet and a sales video unrelated to Petco sourced from YouTube. *See* FAC, ¶¶ 15-22. Nevertheless, even Plaintiffs' untailored and generic allegations essentially concede that Salesforce's only function is to create and store chat transcripts that can later be provided to its client. *See id.*, ¶ 24 ("[D]ata is then analyzed by Salesforce before being provided to any entity that was a party to the conversation (like [Petco]).") Even assuming these generalized allegations are true, simply collecting and later providing transcripts to Petco, as Petco's dedicated chat service provider, does not violate CIPA. *See Noom*, 533 F. Supp. at 832-33; *Yale*, 2021 WL 1428400, at *3 (granting a motion to dismiss because the licensed software "is not a third-party eavesdropper. It is a vendor that provides a software service"). The FAC contains no plausible factual allegations that Salesforce mined and/or sold data for Salesforce's own purposes. Without these allegations, and the facts to support them, Plaintiffs' aiding and abetting claim against Petco fails.

            2.    *Plaintiffs fail to plead that their communications were "intercepted" while "in transit".*

As discussed above, in order to successfully advance a CIPA claim against Petco under the aiding and abetting prong, Plaintiffs have to establish an underlying § 631(a) violation by Salesforce. To the extent Plaintiffs claim that Salesforce violated § 631(a)'s second prong—the allegations in the FAC are woefully insufficient. CIPA § 631's second prong "only imputes liability when the defendant reads, or attempts to read, a communication that is '*in transit or passing over any wire, line, or cable*, or is being sent from, or received at any place within'

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

California." *Mastel*, 549 F. Supp. 3d at 1136 (emphasis added).    For a communication "to be intercepted" it "must be acquired ***during transmission***, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (emph. added) (analyzing in the context of the Federal Wiretap Act).[6]  The Ninth Circuit in *Konop* reasoned that "[t]his conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'" *Id.* (quoting Webster's Ninth New Collegiate Dictionary 630 (1985)).

Courts applying § 631 and the Federal Wiretap Act have acknowledged that, given the speed of modern internet communications, their "application to that form of electronic communication is undoubtedly limited." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014).  This is largely because internet communications, such as email and chat features, travel so quickly that there is only an incredibly narrow window during which an interception *could occur*.  *See id.* at 951-52.  Indeed, numerous courts have held that while emails (and/or messages) may be improperly accessed either on the originating or receiving end, they are not typically intercepted during transmission. *Id.*; *see also, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1031 (C.D. Cal. 2012) (dismissing Electronic Communications and Privacy Act claim upon finding that "Defendants did not access, disclose, or use any emails that had been acquired during transmission.  Rather, the emails Defendants viewed were stored on Gmail."); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. 2020) (Hayes, J.) (dismissing Federal Wiretap Act claims finding allegations failed to support the inference that the content of any communication was "acquired during transmission.")

---

[6] In interpreting § 631, courts have generally construed it "as coextensive with the [federal] Wiretap Act." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1228, n.9 (C.D. Cal. 2017) (citing *Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1033 (N.D. Cal. 2014); *see also* Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2523 ("Federal Wiretap Act").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

Here, Plaintiffs do not allege any facts plausibly showing that Salesforce intercepted the contents of their communications while *in transit*.  Rather, Plaintiffs' allegations are limited to asserting that Salesforce merely receives, captures, creates, and stores chat transcripts.  *See generally*, FAC.  As the above-cited cases recognized, however, the access to content of a typed chat communication cannot be achieved until *after* the communication reaches its intended recipient—in this case, Petco. At that point the communication is no longer in transit, making § 631 inapplicable.  *See, e.g., Noom*, 533 F. Supp. 3d at 833; (stating that "sharing a record is not eavesdropping" under § 631); *Rogers*, 52 Cal. App. 3d at 898 (dismissing a § 631 claim where the defendant merely shared a tape recording of his conversation involving the plaintiff).[7]

Moreover, the Court should ignore Plaintiffs' numerous conclusory allegations that Salesforce somehow intercepted chat messages in *real time* or *while in transit*. *See* FAC, ¶¶ 1, 19, 30, 50.  These factually unsupported allegations cannot uphold a § 631 claim.  *See In re Vizio Inc.*, 238 F. Supp. 3d at 1228 (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague

---

[7] In addition to chat communications, Plaintiffs also allege that Salesforce illegally "captured the date and time of visits, the duration of visits, Plaintiffs' IP addresses, their locations at the time of the visits, their browser types, and the operating system on their devices." FAC, ¶ 30.  Even if true, this constitutes "record information," which is not the type of "content" protected by the Federal Wiretap Act, CIPA, or WESCA.  *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (text messages are content, but "usernames, passwords, and geographic location information are not") (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("[§ 631(a) protects only the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not."); *Ideal Aerosmith*, 2007 WL 4394447, at *3 ("[WESCA] tracks the language set forth in the Federal Act, and has been interpreted identically."); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("The term contents as used in the federal statute does not include dialing, routing, addressing, or signaling information, such as addresses, phone numbers, and URLs ... when they are performing such a function.") (Int. quotations omitted).  As such, this allegation bears no weight on the viability of Plaintiffs' CIPA or WESCA claims.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

allegations about how Vizio's data collection occurs in real-time."); *see also Rosenow*, 2020 WL 1984062, at *7 (granting motion to dismiss federal wiretap claim where allegations that communications were intercepted "in transit" were "conclusory"); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1-2 (N.D. Cal. 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit.").

### B.   Plaintiff Santiago Cannot State a Claim Under WESCA

As relevant here, WESCA prohibits the intentional interception, use, or disclosure of a "wire, electronic, or oral communication" unless one of several exceptions to the statute are satisfied.  *See* 18 Pa. Cons. Stat. §§ 5703, 5704. Plaintiffs allege that Salesforce, using its chat software, so "intercepted, used, and disclosed" the "electronic communications" they had with Petco's website, which was ultimately procured and used by Petco.  FAC, ¶¶ 60-61.  Thus, Plaintiff Santiago's claim turns on whether the alleged "electronic communications" were unlawfully "intercepted" by a "device" within the meaning and scope of the statute. *See* 18 Pa. Cons. Stat. §§ 5702, 5725.  As explained below, the allegations in the FAC do not state a viable WESCA cause of action.

#### 1.   Chat "software code" is not an applicable wiretapping or intercepting "device."

Plaintiff Santiago's WESCA claim fails because the chat software allegedly used by Salesforce does not qualify as a "device" that intercepts communications for purposes of the statute.  *See* 18 Pa. Cons. Stat. § 5703(1).  An "intercept" is an "acquisition of the ***contents*** of any wire, electronic or oral communication through the use of any electronic, mechanical or other ***device***."  *Id.* at § 5702 (emphasis added).  "Intercept" therefore "reduces to acquiring certain communications using a device."  *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 129 (3d Cir. 2022).  And a "[d]evice," in turn, is "[a]ny device or apparatus . . . that can be used to intercept a

- 14 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

wire, electronic, or oral communication" other than things like telephones, telegraphs, hearing aids, [etc.] …." *See* 18 Pa. Cons. Stat. § 5702.

Here, the alleged "device" at issue is not a device at all, but rather computer code that provides a service—specifically, Salesforce's Chat API service.  FAC, ¶ 12.  Petco is unaware of any court that has extended the meaning of "device" under WESCA to include non-physical, intangible things such as Salesforce's chat "technology."  Intangible computer software—i.e., software code—is simply not a piece of equipment, like a telephone bug.[8]  Consistent with this plain meaning, the majority of courts have held that computer software does not qualify as a "device" in the wiretap context.  *See Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007) (holding that a "drive or server on which an e-mail is received does not constitute a device" for purposes of federal wiretap claim); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (concluding same); *Potter v. Havlicek*, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) (dismissing federal wiretap claim because "the word 'device' does not encompass software"); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860, at *5 (Fla. Cir. Ct. June 17, 2021) (dismissing Florida wiretap claim because session replay software is not a "device or apparatus"); *United States v. Ackies*, 918 F.3d 190, 199, n.5 (1st Cir. 2019) (rejecting argument that software is a "device" under federal Stored Communications Act because "software is not a 'device' under its plain meaning").  Because Plaintiff Santiago has failed to allege an applicable "device," as required under WESCA, his claim fails and should be dismissed with prejudice.

---

[8] This is consistent with giving the words "device" and "apparatus" "their plain and ordinary meaning."  *Commonwealth v. Hogue*, 2019 WL 3545843, at *4, n.8 (Pa. Super. Ct. Aug. 5, 2019).  In normal parlance, a "device" is "an object or piece of equipment that has been designed to do a particular job."  Device, Oxford Learner's Advanced Dictionary, available at https://www.oxfordlearnersdictionaries.com/us/definition/english/device.  And an "apparatus" is "the tools or other pieces of equipment that are needed for a particular activity or task."  Apparatus, Oxford Advanced Learner's Dictionary, available at https://www.oxfordlearnersdictionaries.com/us/definition/english/apparatus.

- 15 -

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

2.   *Plaintiff Santiago consented to the "recordation" of his communications with Petco.*

The WESCA claim separately fails because Plaintiff Santiago, as the Pennsylvania plaintiff, consented to the collection, sharing, and use of his communications on the Petco website.  Under WESCA, it is not unlawful to intercept a communication "where all parties to the communication have given prior consent to such interception."  18 Pa. Cons. Stat. § 5704(4); *Popa*, 2022 WL 10224949, at *7 ("[I]f someone consents to the interception of her communications with a website, [WESCA] does not impose liability.").  As applied here, Petco clearly consented.  And the circumstances of the alleged interception confirm that Plaintiff Santiago consented as well.  Under Pennsylvania law, "prior consent can be demonstrated when the person being recorded ***knew or should have known*** that the conversation was being recorded."  *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (emphasis added); *accord Popa*, 2022 WL 10224949, at *8 (same).  Consent does not require "actual knowledge that he or she is being recorded," and implied consent alone will defeat a WESCA claim.  *Id.*  The standard is "one of a reasonable person" under the circumstances.  *Id.*

Here, Petco's website contains an online privacy policy which informs website visitors about the collection, use, and sharing of their data.  *See, supra,* Petco's Privacy Policy.  Specifically, Petco's privacy policy—which is linked on its website and also presented to potential shoppers, loyalty program members who create an account, and customers who purchase online—expressly discloses to visitors like Plaintiffs that Petco may "use third-party tools … to understand how users interact with our online properties."  *Id.*  Any visitor to Petco's website was therefore on notice that a third party, like Salesforce, could be used by Petco as a tool to collect and store visitor data, to include chat communications.[9]  Typically,

---

[9] *See, supra,* Petco's Privacy Policy ("For example, if you contact us through … one of our Sites … we collect your name, email address, online usernames or other identifiers, telephone number, location, date of birth/age, a recording of your call,

whether Plaintiffs actually reviewed Petco's online privacy policy would be an issue of fact not suitable for a motion to dismiss. But as the Third Circuit has noted, whether Plaintiff Santiago saw Petco's disclosures is irrelevant. *See Popa*, 2022 WL 10224949, at *8 ("Though [the plaintiff] claims she never saw the policy, the Pennsylvania Supreme Court has said that 'prior consent' ... does not require 'actual knowledge.'").

Even in the absence of Petco's Privacy Policy, Pennsylvania courts have held that a reasonable person's knowledge that he or she is being "recorded" may be "surmised from the very nature of the selected means of transmission." *Com. v. Diego*, 2015 PA Super 143, 119 A.3d 370, 377 (2015). Certainly, one such means of transmission is *anything* sent over the Internet. *See Com. v. Proetto*, 771 A.2d 823, 829 (2001), *aff'd*, 837 A.2d 1163 (2003) ("Any reasonably intelligent person, savvy enough to be using the Internet" knows that such communications "are received in a recorded format, by their very nature."); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 266 (3d Cir. 2016) ("Most of us understand that what we do on the Internet is not completely private … We recognize, even if only intuitively, that our data has to be going somewhere."). Ultimately, the "very act of sending a communication over the Internet" demonstrates "***express[] consent[]*** to the recording of the message." *Proetto*, 771 A.2d at 829 (emph. added).

Here, any reasonable person would assume (or otherwise understand) that all chat messages voluntarily typed on Petco's website into an empty text field in a chat box and affirmatively sent to Petco representatives for purposes of obtaining a response, would be "recorded" and collected, either by Petco or a third-party acting on Petco's behalf. By voluntarily visiting Petco's website and typing in content to

your pet's information, and ***other information you choose to provide during our interaction***."); ("We disclose your personal information to service providers, contractors, and authorized vendors we use to perform business services for us."); ("For example, we share your personal information with vendors we use to assist us with shipping, delivering, and fulfilling your orders; providing customer support; processing your payments; administering our loyalty programs; and maintaining our IT, security, and other critical business systems.").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

be sent over the internet, Plaintiff Santiago consented to the "collection" or "recording" of his messages. Because Plaintiff Santiago cannot bring a state wiretap claim for conduct to which he consented, the WESCA claim should be dismissed with prejudice.

## C.   Plaintiffs' Claims For Punitive Damages Must Be Dismissed.

Both Plaintiffs' request for punitive damages must be dismissed from the FAC. For starters, both Plaintiffs' claims must be dismissed to the extent they are premised on CIPA because the statute does not explicitly authorize punitive damages, and Petco is unaware of any cases where punitive damages have been awarded under CIPA. *See Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *10 (S.D. Cal. 2016) (Curiel, J.) (acknowledging lack of authority and dismissing punitive damages under CIPA). *Sephora*, *supra*, 2023 WL 2717636, at *17, n. 13 ("[T]he Court's independent research, appear to support a finding that ***punitive damages are unavailable*** for violations of CIPA.") (emph. added). Moreover, while punitive damages may be statutorily available under WESCA, neither Plaintiff provides any plausible factual support to suggest they are entitled to punitive damages under either California or Pennsylvania law.[10]

A factual showing of oppressive, fraudulent, or malicious conduct is a *prerequisite* for any punitive damages claim under both California and Pennsylvania law. *See* Cal. Civ. Code § 3294(a) (emphasis added); *State Farm Mut., Auto. Ins. Co. v. Tz'doko V'CHESED of Klausenberg*, 543 F. Supp. 2d 424, 432 (E.D. Pa. 2008) ("Under Pennsylvania law, punitive damages are generally allowable when the claim is 'based on conduct which is malicious, wanton, reckless, willful, or oppressive.'"). In the wake of *Twombly* and *Iqbal*, conclusory allegations of malice, fraud, or

---

[10] In this Circuit, where the basis of a request to strike punitive damages is the lack of factual allegations to support such a claim, the "proper medium for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6) not Rule 12(f)." *Martin v. Cty. of San Diego*, 2011 WL 1775691, at *5 (S.D. Cal. 2011) (Anello, J.); *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010) (explaining that Rule 12(b)(6) is the appropriate mechanism for seeking dismissal of an improper prayer for relief).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND

oppression are insufficient to state a prayer for punitive damages.  *See Logue v. Curtis Mgmt. Co., Inc.*, 2019 WL 2249981, at *3 (S.D. Cal. 2019) (Bashant, J.) ("The bare conclusory assertion that Defendants acted 'intentionally and recklessly' is insufficient.").  Here, Plaintiffs fail to even offer conclusory allegations to support a claim for punitive damages.  In fact, the words "malice", "fraud", or "oppression" are not used once in the FAC.

Because Plaintiffs have not stated a plausible claim for punitive damages against Petco, their request must be dismissed from the FAC.  *See id.*; *Great Am. Ins. Co. v. Vasquez Marshall Architects*, 2019 WL 5727414, at *3 (S.D. Cal. 2019) (Bencivengo, J.) ("Plaintiff's conclusory allegations that Defendants acted 'deceitfully and maliciously' are insufficient to … support its request for punitive damages."); *Freedom Transp., Inc. v. Travelers Companies, Inc.*, 2016 WL 7496731, at *9 (C.D. Cal. 2016) (finding conclusory allegations in support of punitive damages warranted dismissal where allegations lacked a corresponding factual basis).

## V.   **CONCLUSION**

For all of the foregoing reasons, Petco respectfully requests that the Court dismiss Plaintiffs' FAC in its entirety with prejudice.

Dated:  April 19, 2023

**BAKER & HOSTETLER LLP**

By:   */s/ Kamran B. Ahmadian*
     Bethany G. Lukitsch
     Kamran B. Ahmadian

Attorneys for Defendant
PETCO ANIMAL SUPPLIES
STORES, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
CLEVELAND